### BEADLESTON *v.* BEADLESTON.

(*Supreme Court, General Term, First Department.* November 23, 1888.)

1. DIVORCE—EVIDENCE—ACCOMPLICE.

　　In an action for divorce on the ground of adultery by the wife, the uncorroborated testimony of an alleged accomplice, who is shown to have threatened her with exposure if she did not pay him money, and who, though entertaining resentment against her after a disagreement, is stated to have returned letters written to him by her, is entitled to little weight, and a finding that a visit made by him at her home was on her invitation cannot be sustained by his evidence alone.

2. SAME—PROOF OF ADULTERY.

　　Evidence that one with whom no adultery is attempted to be shown was discovered on one occasion in the room of defendant when she was sick, using language, and guilty of conduct, improper, but not amounting to criminal intimacy, is not admissible.

3. SAME.

　　Evidence that defendant after attiring herself to leave her summer hotel, and while the carriage was waiting, was talking with witness in the hall, when her alleged paramour appeared, and she went into his room, and remained 5 or 10 minutes, leaving witness standing in the hall, after which she came out, bade witness good-bye, and went away, is not sufficient to sustain a finding of adultery, though the alleged paramour, whose general testimony appears incredible, testifies that adultery then occurred.

4. SAME—COSTS.

　　Where there is reason to believe that both parties to a divorce suit have, through the aid of detectives employed for that purpose, obtained false testimony, no costs will be allowed.

Appeal from judgment on report of a referee.

Action by Alfred N. Beadleston against Mary E. Beadleston for divorce. Defendant appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and DANIELS, JJ.

*Eugene D. Hawkins,* for appellant. *Samuel Untermeyer,* for respondent.

DANIELS, J. The action was brought by the plaintiff to secure a judgment for a divorce from the defendant on the ground of adultery; and to support the action she was charged with this misconduct, by the complaint, from the early part of the year 1877 until and including the year 1884. The parties resided in the city of New York, on West Fifty-Second street, and had a summer residence for a portion of the time at Lake George, in which, and in a hotel, they resided the most of the summers and the early part of the falls. While at the hotel occupied by them for a portion of the time, and the residue of the time at their summer residence, it is charged that the defendant was guilty of this misconduct with four different individuals; and the referee has found that she was guilty to the extent alleged against her in the complaint, involving what may be considered, under the circumstances, next to an incredible state of facts, and assuming that she had been degraded to the character of a mere prostitute. And it is quite remarkable that, if this had been her course of conduct, it should have escaped the observation of the

plaintiff until September, 1884, when he obtained a partially-written letter in his household, in which she substantially confessed her inclination to indulge in this description of misconduct. Preceding that time she appears to have suffered nothing in the estimation of her associates, either at Lake George or the city of New York; and if this continued and repeated misconduct had taken place, as it has been alleged and found by the referee, it is almost beyond belief that it should not have been exposed earlier than at that time, and discovered by the plaintiff, her husband. Still the testimony given to support the charges was very direct, and in some instances, not required to be stated, probably free from substantial grounds of doubt; but so far as it was obtained from the witness Sherrill, who was a clerk in the hotel, extending from the summer of 1877 to the early part of 1878, the evidence certainly is not free from the very gravest doubts. He was the person with whom the misconduct during this period of time is alleged to have taken place; and it was shown upon the trial that he then entertained feelings of resentment against the defendant, and by letter had applied to her for the sum of $250, threatening her exposure in case she failed to forward it. It is also stated in the seventeenth finding of fact that a disagreement has arisen between the defendant and Sherrill, and that she took from him a part of the letters which he then had, and had been written by her to him. Then it has been added that he sent her by express from an office under the Brandredth House, at Canal street, in Broadway, a number of such letters which he then had with him, and he threatened to expose to the plaintiff her relations with him. This statement is hardly credible; for if he at that time had acquired this degree of resentment, by reason of disagreement with her, he certainly would not have returned to her the letters which she had written to him, and by which he might have fortified, if he had such letters, the exposure and statements he designed to make. In addition to that, he feigned unwillingness to testify upon the trial concerning what was alleged to have taken place between himself and the defendant. But by his subsequent examination it appeared that this conduct on his part was entirely insincere, and that he attended voluntarily, intending to give the evidence which he did against the defendant. A witness actuated by motives of this description, being a participant in the misconduct, and making the statements which he did to excuse or exculpate himself in the first instance, inflamed into resentment because of his inability to extort money from the defendant, is not in such a relation to the controversy as to entitle his testimony to any substantial reliance. But in some respects he was corroborated in his statements, and may have sworn to the truth when he was so corroborated in his evidence. But the referee found further that, after the close of the fall season of 1877 at the lake, this witness, in December and January, visited the defendant at the residence of herself and her husband, on Fifty-Second street, in the city of New York, where he remained for two weeks or thereabouts. During this visit it has further been found as a fact that on various occasions this alleged misconduct was there repeated between these parties. But as to this fact it depends entirely on the evidence of this accomplice, for the other testimony given concerning his visit at the residence of the parties does not corroborate him in his statements concerning what is alleged to have occurred at the house during this period. It is stated in the finding that the witness visited the residence on the invitation of the defendant, which would be a circumstance, if it existed, tending to give some probability to his own evidence. But that circumstance does not seem to have been proved; and finding it against the defendant was error, having something to do with the entire disposition of the case, and exhibiting the favorable manner in which the testimony was construed to support the plaintiff's case by the referee. As to this charge and this finding there is no satisfactory corroborating evidence warranting the conclusion drawn by the referee; and without that the finding should not have been made, and cannot be supported.

The referee also found that the defendant was chargeable with misconduct of the same description with Armstrong, who was a bar-keeper at the hotel where she occupied rooms for a portion of the time while she was at the lake. It has been stated in the points presented on behalf of the defendant, and which appear to have been drawn with very little discrimination as to the force or effect of the evidence, that there was no allegation of adultery in the complaint with this person; but the sixteenth subdivision of the complaint shows that to have been a misapprehension. Testimony was given by the witness Julia Gerry tending to establish the fact, at least, of very friendly intimacy existing between the defendant and this bar-keeper; but it proved no more than the fact that he was on one occasion in the defendant's room at the time when she was sick, and when it is not to be supposed that intercourse of this description would take place between the parties, even if they had been so disposed, especially as the room was not closed to the entrance of other persons. This witness testifies that she went into the room where the defendant was sick in bed, and found Armstrong on the bed kissing and hugging her, and saying, "Good-bye, Mamie dear," and he felt dreadfully at parting. This seems to have been all that the evidence disclosed as to the conduct of Armstrong; and while it was extremely, as well as notoriously, improper, it was not sufficient, under the authorities of *Pollock* v. *Pollock*, 71 N. Y. 137, and *Conger* v. *Conger*, 82 N. Y. 603, to prove this alleged misconduct. And that appears to have been the view entertained when the evidence was offered by the plaintiff's counsel, for it was then supposed that misconduct with Armstrong had not been charged in the complaint; and the statement of the witness first made the defendant's counsel moved to strike out on that ground, and then it was admitted that it was not charged as a fact; and it was added by the plaintiff's counsel: "We do not now propose to make a charge of the commission of adultery with Armstrong, but we propose to show, by this class of testimony, inclination on the part of the defendant, and general conduct on her part, which will justify the referee in holding that inclination has been established." The objection was taken in behalf of the defendant that the inclination would have to be with the parties charged, and that there was no objection to that evidence. This motion was denied, and then the evidence which has been mentioned was taken; and as to the taking of the subsequent evidence, as well as the denial of the motion, the defendant excepted to the rulings of the referee. This evidence was not proper for this purpose; for the defendant was not being tried for her general conduct or inclinations, but on specific charges. It had no tendency to establish either of these charges, or to prove the fact that adultery had been committed by the defendant with either of the other persons mentioned in the complaint. It could not be logically urged because the defendant had been familiar in this manner with Armstrong, and had accepted these demonstrations of attachment from him, that she was guilty of adultery with either of the other persons. The evidence had no relation or connection with the charge of adultery as to either of such persons; and the referee was not at liberty to infer, because of this conduct with Armstrong, that she had committed adultery with either one of the other individuals mentioned in the complaint and in the evidence. What he had a right to receive in support of those charges was evidence tending to establish the fact that adultery had been committed with those particular individuals, and not as to other specific or general misconduct of the defendant; and this evidence had no tendency whatever to establish either one of those charges. It was accordingly erroneously received by the referee, and the exceptions taken to its admission, and to the refusal of the referee to strike out what had previously crept into the case, were well taken.

The referee also found that the defendant had been guilty of adultery with the witness Sherrill on the day when she left Lake George, in the month of October, 1878. This conclusion appears to have depended upon the testimony

of Esther Phelps, who stated that the carriage was at the door waiting, and she stood in the hall to bid the defendant good-bye when she came out to go down stairs.  Her statement further is that Sherrill was in his room in the corner, and while the defendant was talking to the witness he came out, and by his motions she saw that he wanted the defendant to go into his room; that they went in and closed the door, and were in there from five to ten minutes, and then the defendant passed down stairs, after saying good-bye to the witness, and she appears then to have left the hotel.   What this evidence proved was, assuming it to have been truthfully given, that the defendant was extremely indiscreet in her conduct, affording grounds for suspicion.  But it did not prove the fact that adultery was committed on this occasion.   It is not probable that it would be, when the defendant had already attired herself for leaving the hotel, and left the witness standing in the hall, and in her plain sight went into this room, and returned again to her before she left the hall, and then bade her good-bye.   The circumstances that the carriage was waiting to take her away also tends to render this evidence too infirm to support this conclusion of the referee; and the only other testimony beyond it is that of the witness Sherrill, who testified to adultery with the defendant on about every occasion when he met her, or was at liberty to approach her.   This evidence adds substantially no weight to the statement of this witness, who was excusable for her suspicions, but failed to prove the fact found by the referee. A very large number of countercharges were made by the defendant against the plaintiff; and, while extended evidence was given to establish the truth of these charges, this evidence proved in the end, in several instances certainly, to have been fabricated and unfounded.   As to the charge, however, of criminal misconduct on the part of the plaintiff with the person named Rosie, who was the witness Rosalind Deffer on the trial, and stated that she did not recognize him, there was certainly a great degree of probability in favor of its truth.   This was alleged to have taken place at the house known as "99 West Third Street," in the city of New York, and was not only proved, but found, to be a house of prostitution and ill fame.   A person living at the house, whose name is Mary Caulfield, but testifying to no misconduct between herself and the plaintiff, swears positively to the fact that he visited this house, and was in a sleeping room for a considerable time with Rosie under circumstances rendering it probable that it was for no other object than sexual intercourse. The witness was subjected to a very minute and extended cross-examination without really disclosing any substantial inconsistencies in her statements, and there certainly is reason for believing that she testified truthfully, notwithstanding what was said by Boswell concerning statements afterwards made by her.   She was not interrogated as to such statements, and had no opportunity afforded to her to make any explanation, by way of denial or otherwise; and in this state of the case the evidence of this witness was entitled to but little reliance.   But it is not necessary for the disposition of the appeal at this time to hold that either this or any of the other acts of adultery charged against the plaintiff were so far proved as to render it the duty of the referee to find and report their existence; for as to the other portions of the case, especially of the testimony which was received to prove the defendant's conduct with Armstrong, and which was not offered or received to establish the fact of adultery with him, and did not have that effect, the decisions of the referee were erroneous, and they can be no otherwise corrected than by a reversal of this judgment.   For it cannot be seen that this objectionable evidence did not influence the mind of the referee throughout the whole case in the decisions he made in favor of the plaintiff, as well as those which he made against the defendant.   The judgment in the case should be reversed, and a new trial ordered, without costs, which should be withheld because of the circumstance that there are very cogent reasons for believing that each of these parties during the progress of the trial placed witnesses upon the stand who testified

falsely, and were probably obtained for that object through the instrumentality of the detectives employed to procure evidence of this description, understanding that it was without foundation.

VAN BRUNT, P. J., concurs.

BARTLETT, J., (*concurring*.)  The issues in this action are made up of charges and counter-charges of adultery, with denials by both parties.  The case was tried before a referee, whose findings convicted the defendant, and acquitted the plaintiff of adultery.  The referee's report has been confirmed at special term, and from the judgment entered thereon the defendant has appealed.  To the voluminous case and exceptions I have given the amplest examination and the most careful consideration, and I am satisfied that justice requires us to order a new trial.  There is testimony bearing strongly against the defendant, and there is also testimony bearing strongly against the plaintiff.  Much of this evidence is of a nature which does not permit it to be freely discussed in detail.  The result to be reached depended chiefly upon the degree of credence to be given to the respective witnesses.  After reading and re-reading the testimony, I cannot resist the impression that the learned referee applied a more rigorous test or measure of credibility to the defendant's witnesses than that which he applied to the witnesses for the plaintiff.  He refused to believe evidence against the plaintiff which appears to have been just as trustworthy as some of the proof against the defendant which he accepted as true.  Ordinarily such action on the part of a trial court affords no sufficient ground for reversal.  The judge or referee sees the witnesses, observes their bearing and manner of testifying, and is usually best able to determine whether their statements are credible or not.  But this consideration is not controlling where the case shows that the judge or referee has made findings of fact without any evidence to sustain them, or against the evidence.  In that event, doubt is cast upon the correctness of his decision in other respects, and the appellate court is not bound to assume that he must have been right in determining whom to believe simply because he saw the respective witnesses.  Under such circumstances, the general term should look closely into the evidence in order to make sure that testimony in behalf of the appellant has not been arbitrarily disregarded.  The only absolutely direct testimony to adultery on the part of the defendant was given by a person who professes to have been her paramour.  There is proof that this man attempted to blackmail her before he made his accusation known.  The respondent concedes that no reliance should be placed upon his evidence, except so far as it is corroborated by disinterested witnesses.  The case against the defendant depended largely upon a pencil writing, appearing to be a draft of the body of a letter, in her handwriting, without address or signature, and alleged to have been intended for another paramour, in which she expressed regret that he did not come to her room on a certain occasion at Troy, N. Y.  The referee found that the defendant committed adultery with the person to whom this letter was written, on a subsequent occasion, in a hotel at Troy.  This finding is not supported by the evidence in the case.  The proof as to what occurred at the Troy House in December, 1884, is utterly insufficient to sustain the conclusion that the defendant was guilty of adultery on that occasion.  While this finding may not be essential to sustain the judgment, the error of the referee in making it is significant.  He appears to have believed substantially all the proof offered in support of the charges of adultery against the defendant, and to have disbelieved all the proof offered in support of the charges of adultery against the plaintiff.  Some of the evidence which he thus discredited certainly seems to be as cogent and convincing as some which he deemed credible enough to make the basis of findings against the defendant.  Upon the record in this case, if he was right in all his conclusions adverse to

the defendant, he was wrong in wholly exonerating the plaintiff, and the finding that there is no proof of the commission by the plaintiff of any act of adultery whatsoever must be deemed to be against the evidence. This matter may appear in an entirely different light upon a new trial. Since the cause was tried, the law of this state has very wisely been changed so as to permit a party to a divorce suit to testify in disproof of a charge of adultery. Both parties to this action will therefore be enabled to meet the accusations against them by their own testimony, and the result of a new trial, even if precisely the same, cannot fail to be more satisfactory than any conclusion reached under the former law of evidence, which closed the mouth of the accused. The judgment should be reversed, and a new trial granted. I think the new trial should be had at the circuit before a jury. Another reference will inevitably involve too much delay.